## Luxor Homes Inc. v. Flanagan

*Eric C. Diggan,* for plaintiff.
*Kurt B. Geishauser,* for defendants.

SPRECHER, *J.,* July 9, 2008—On May 5, 2008, this court entered a verdict in favor of plaintiff for $36,804.90. Defendants appeal this order. This opinion is filed pursuant to Pa.R.A.P. 1925. Since defendant did not order a transcript of the second day of trial, this court cannot present a full recitation of the facts. The following are the pertinent facts from the first day of trial and those facts gleaned from the record.

### FACTS

On July 22, 2004, the parties entered into a residential construction agreement for plaintiff, Luxor Homes Inc.,

to do a custom renovation of an existing dwelling owned by defendants, Michael S. Flanagan and his wife, Megan C. Flanagan. Defendants gave plaintiff a $20,000 deposit for the work. Plaintiff was to act as a general contractor and was to receive a fee equal to 15 percent of the total costs, whether the subcontractors were obtained by it or by defendants. Plaintiff completed drawings and obtained various permits for costs of $3,000.

On August 22, 2004, defendants informed plaintiff that they no longer wished to proceed with the project, but had another project for plaintiff. The remaining $17,000 from the initial deposit was applied towards the new project.

Marc Geddio testified that he is the vice president of plaintiff which is a family-owned business that was incorporated in 1997. Plaintiff is a general contractor offering design/build services.

The new project consisted of real estate defendants purchased from a builder who had dissolved his business. This building was half finished, and the exterior materials were 85 percent complete. The interior needed framing and the mechanics, plumbing, electrical, and heating, were partially installed. No concrete was poured in the basement or garage. The property had been exposed to the elements for approximately six months. This exposure resulted in the delaminating of the floors, exposure of the interior wood to the weather conditions, and mold conditions. During telephone conversations that began on August 24, 2004, and ended with a site visit on August 31, 2004, defendants agreed to the same 15 percent profit margin for plaintiff that had been used in the written contract.

Plaintiff could only start the job on September 3, 2004, when settlement occurred. Plaintiff was unable to obtain a cost analysis from the blueprints because they were physically inaccurate. For that reason, the parties were operating under an oral agreement pursuant to the same terms of the earlier written agreement.

Mr. Geddio presented into evidence the invoices that were submitted to defendants. The fees based on these invoices were $36,804.90.

Defendants claim that they ordered plaintiff off the job because it was doing shoddy work. Plaintiff last worked on the project in December 2004. Defendants admitted in their answer that the parties were operating under an oral contract, but they never agreed that they would use the same terms that were in the written agreement. Defendants submitted in their pretrial memorandum that they were willing to pay plaintiff 15 percent for work completed by it before they terminated its services.

Based on the evidence, this court awarded plaintiff the sum of $36,804.90. Defendants appeal this award. Defendants raise the following issue in their concise statement of errors complained of on appeal.

## ISSUE

Defendants' statement of errors complained of, filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), raises a single issue.

(1) Whether this court erred in finding that a contract existed or that plaintiff was entitled to an award based on quantum meruit theory.

## DISCUSSION

Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person, in the position of the parties, would be led to understand by such conduct under all of the surrounding circumstances. *Temple University v. Healthcare Management,* 764 A.2d 587 (Pa. Super. 2000). In the case sub judice, this court found that the parties, by their conduct and actions, entered into an oral contract that plaintiff would perform similar functions and be paid in the same manner as the written agreement had provided.

Defendants agreed to pay 15 percent for all completed work done under plaintiff's leadership. The amounts that defendants dispute are for work that was not completed prior to plaintiff's termination. Paragraph 23 of the agreement provides in pertinent part that all change orders and additional work not covered by the contract will be invoiced at cost plus 15 percent to the owner. (Plaintiff's exhibit no. 1.) This provision allows plaintiff to collect fees for the services of subcontractors for work that is performed by them. Although plaintiff's services may not have been utilized until the completion of the project, its efforts obtained the desired results. For that reason, it deserves compensation. To protect itself from a situation such as the instant one, this provision was made a part of plaintiff's standard written contract. This court found that the parties orally agreed to perform under the terms and conditions of the written agreement until a new written contract was executed. Since no new contract was executed by the parties, the provision of 15 percent

of the gross profits for all invoices received by plaintiff remained in effect as part of the oral contract. This court did not find that defendants could pick and choose what they wanted to pay to plaintiff. Therefore, this court awarded plaintiff the amount which he proved through his invoices.

For the forgoing reasons, this court submits that defendants' appeal should be dismissed.